IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SYSCO CORPORATION and SYSCO GRAND RAPIDS, LLC,<br>   Plaintiffs,<br><br>  v.<br><br>AARON I. KATZ and REINHART FOODSERVICE, LLC,<br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No: 13 C 5477<br><br>Judge Ronald A. Guzmán |

## ORDER

For the reasons stated above, Katz's motion to dismiss [26] is granted in part and denied in part while Reinhart's motion to dismiss [23] is granted.

## STATEMENT

Sysco Corporation ("Sysco") and Sysco Grand Rapids, LLC ("SGR"), collectively, "Plaintiffs," sued their former employee Aaron Katz and his new employer Reinhart Foodservice, LLC when he left SGR and began employment with Reinhart. Both Katz and Reinhart have filed motions to dismiss.

### I. Facts

The following well-pleaded facts are taken as true for purposes of these motions to dismiss. Katz began working at Sysco in or around 1999. (Am. Compl., Dkt. # 41, ¶ 2.) In or about October 2004, Katz began employment with Sysco Dallas as Executive Vice-President and signed a Confidentiality Agreement at that time. (*Id*. ¶ 28.) At some point, Katz began employment with SGR. During the course of his employment, Katz was responsible for high-level strategic decisions, had access to confidential client lists, sales and cost information, and was privy to certain strategic initiatives of SGR. (*Id*. ¶ 30.)

Katz announced his resignation on July 1, 2013, telling the Vice-President for Employee Relations that he had been planning to join Reinhart for some time but had waited until June 29, 2013 so that certain of his retirement benefits would vest. (*Id*. ¶ 45.) Prior to that date, while on vacation, Katz logged onto his SGR e-mail account and remotely accessed Plaintiffs' stored communications and electronic document repository systems. (*Id*. ¶ 34.) Over several days, Katz forwarded e-mails to his wife's e-mail account with SGR/Sysco documents attached. (*Id*.) These documents covered a variety of topics including merger and acquisition strategy materials, templates for master distribution agreements, sales forecasts, information related to marketing programs and a spreadsheet detailing sales figures and profit margins. (*Id*. ¶ 36.) Some of the documents date

back to 2008 while others were only days old. (*Id*. ¶ 37.)

On information and belief, Katz disclosed the documents or the information contained therein to Reinhart. (*Id*. ¶ 38.) Sysco has learned that Katz accepted employment with Reinhart on or about May 8, 2013, almost two months prior to his resignation. (*Id.* ¶ 48.) During this almost two-month period between his acceptance of employment at Reinhart and his resignation from SGR, Katz had repeated communications with Reinhart executives. (*Id*.) After Katz's last day at SGR, which was July 1, 2013, individuals from SGR's Information Technology Department began a review of Katz's recent e-mail history and discovered the e-mails he had forwarded to his wife's e-mail account. (*Id*. ¶ 50.) On July 9, 2013, Plaintiffs sent Katz and Reinhart a letter informing them that they were aware of the e-mails and documents that Katz sent to his wife's e-mail account, demanded that Katz refrain from accessing, disclosing, or in any way using Plaintiffs' confidential or proprietary information, and instructed Katz and Reinhart to preserve all evidence relating to such activity. (*Id*. ¶ 51.)

On July 15, 2013, Plaintiffs received a response from Reinhart, which was copied to Katz, in which Reinhart stated it had discussed the issue with Katz, who denied sharing any confidential information with Reinhart personnel, and stated that he had destroyed any of Plaintiffs' information he may have had upon his termination of employment with SGR. (*Id*. ¶ 52.) On July 17, 2013, Plaintiffs received an e-mail from Katz stating that he had destroyed all information he had from them. (*Id*.) Katz waited two days after he received Plaintiffs' July 9, 2013 letter, which instructed him to preserve all evidence, to destroy the e-mails and documents. (*Id*. ¶ 54.) He destroyed the documents and e-mails while an employee of Reinhart and with the knowledge of others at Reinhart, including Grace Shaff, Reinhart's General Counsel. (*Id*.) Subsequent forensic examination uncovered information that Katz had been considering relocating to the Chicago area, where Reinhart is located, as early as April 2013 and that Katz had been sending e-mails to his wife's e-mail account with Plaintiffs' documents attached as of May 4, 2013. (*Id*. ¶ 57.) On or about July 23, 2013, Plaintiffs discovered an e-mail sent from Katz's wife's e-mail account to Katz's SGR e-mail account on July 1, 2013, which appeared to be sent by an individual named "Vince" asking "how your notice went." (*Id*. ¶ 59.) The sender asked Katz to call him at 847-274-8072, which an online reverse lookup indicates is registered to "Reyes, H." (*Id*. ¶ 60.) The parent company of Reinhart is Reyes Holdings, and, on information and belief, the phone number in the e-mail is registered to Vince Daniels, the Vice-President of Human Resources for Reinhart. (*Id*. ¶ 61.)

Plaintiffs filed suit against Reinhart and Katz alleging the following counts: Count I – violation of the Computer Fraud and Abuse Act (against Katz and Reinhart); Count II – violation of the Stored Communications Act (against Katz); Count III – breach of contract (Katz); Count IV – breach of fiduciary duty (Katz); Count V – breach of duty of loyalty (Katz); Count VI – intentional interference with contract (Reinhart); and Count VII – inducement of breach of fiduciary duty (Reinhart).

## II.     Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.    Analysis

### A.    Computer Fraud and Abuse Act ("CFAA")–against Katz and Reinhart

The CFAA creates a civil cause of action against an individual who: "(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accessed a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (C) intentionally accessed a protected computer without authorization, and as a result of such conduct, causes damage and loss." 18 U.S.C. § 1030(a)(5)(B). To succeed on a CFAA claim brought under § 1030(a)(5)(B), a plaintiff must prove the damage or loss resulted in losses to one or more persons during any one-year period aggregating at least $5,000 in value. 18 U.S.C. § 1030(c)(4)(A)(i).

Reinhart and Katz contend that Plaintiffs have not alleged damage or loss as those terms are used by the CFAA. The CFAA defines "damage" as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). "Loss" under the CFAA is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Plaintiffs contend that they are not alleging that Katz's unauthorized access of Plaintiffs' electronic communications and forwarding of these to his wife's e-mail account violated the CFAA. Rather, Plaintiffs point to his attempt to cover-up his conduct and the resulting effect on their data that violated the statute. Specifically, they assert that it was Katz's deletion of e-mails from the "sent" folder in his SGR e-mail account as well as the deletion of those e-mails from his "deleted items" folder that constituted the CFAA violation. (Am. Compl., Dkt. # 41, ¶ 42.)[1] These

---

[1] Although the Amended Complaint is silent on this fact, it appears that these deletions must have occurred prior to Katz's resignation in order for him to have had access to the Plaintiffs' computer systems.

3

allegations are sufficient to allege damage as to Katz, but not as to Reinhart.[2] As noted by Reinhart, Plaintiffs have failed to allege any acts implicating Reinhart with respect to the CFAA claim. In response, Plaintiffs refer to allegations that Katz had been planning to join Reinhart for approximately two months prior to his resignation (Am. Compl., Dkt. # 41, ¶ 48), during that period, Katz had repeated communications with Reinhart personnel (*id*.), in the weeks prior to his resignation, Katz remotely accessed Plaintiff's computer system and e-mailed documents to his wife's e-mail account (*id*. ¶¶ 34, 36), and on the day of his resignation, an e-mail to Katz's wife's e-mail account appears to have been sent by Reinhart's Vice-President of Human Resources. (*Id*. ¶¶ 59-61.) But, none of these allegations implicate Reinhart in the alleged CFAA violation, which, according to Plaintiffs, was Katz's purported cover-up by deleting items from his "sent" and "deleted items" folders located on Plaintiffs' computer system.

Indeed, while Plaintiffs allege that on or around July 11, 2013 (two days after receiving Sysco's letter demanding that he refrain from accessing, disclosing or using the confidential information), Katz "destroy[ed] the e-mails and documents" "with the knowledge of others at Reinhart" (*id*. ¶ 54), Plaintiffs fail to state how the destruction occurred. If Katz allegedly destroyed printouts of the e-mails and documents, then the CFAA would not be implicated.

Thus, because Plaintiffs have alleged a CFAA claim against Katz but have failed to allege a CFAA claim against Reinhart, Katz's motion to dismiss the CFAA claim is denied while Reinhart's motion is granted.

B.  Stored Communications Act ("SCA")–against Katz

The SCA provides a cause of action when an individual or entity "intentionally accesses without authorization a facility through which an electronic communication service is provided" or "intentionally exceeds an authorization to access that facility" and "thereby obtains, alters or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system. . . ." 18 U.S.C. § 2701(a). The SCA does not apply to conduct authorized "by the person or entity providing a wire or electronic communications service" or "by a user of that service with respect to a communication of or intended for that user." 18 U.S.C. § 2701(c).

Katz argues that Plaintiffs have failed to allege that Katz's actions were unauthorized. Specifically, he contends that because he was still employed by SGR at the time he allegedly forwarded the e-mails, he was an authorized user of the SGR's e-mail server. However, Plaintiffs allege that Katz forwarded e-mails attaching confidential documents to his wife's e-mail account

---

[2] Another court in this district recently noted that while the Seventh Circuit has not decided whether a plaintiff must allege damage and loss or damage or loss, "every court of appeals to address the point has concluded that a plaintiff is only required to allege damage *or* loss." *Int'l Broth. of Elec. Workers, Local 134 v. Cunningham*, No. 12 C 7487, 2013 WL 1828932, at *4 n.2 (N.D. Ill. Apr. 29, 2013) (emphasis added). This Court agrees with these courts; thus, alleging damage is sufficient to state a claim under the CFAA.

while still employed by Plaintiffs but having accepted a position with Reinhart. (Am. Compl., Dkt. # 41, ¶¶ 34, 35, 46.) Plaintiffs further allege that Katz's access in this regard was outside the scope of his authority. (*Id.* ¶¶ 36, 39-42.) Making all inferences in Plaintiffs' favor, these allegations sufficiently allege an SCA claim.

Katz also argues that Plaintiffs fail to allege damages. According to Katz, Plaintiffs fail to demonstrate the necessity of injunctive relief or to allege any facts relating to damages. The Court disagrees. As an initial matter, because Plaintiffs seek punitive damages and attorney's fees, which can be recovered absent proving actual damages, the SCA count survives. *Chadha v. Chopra*, No. 12 C 4204, 2012 WL 6044701, at *3 (N.D. Ill. Dec. 5, 2012) (because plaintiff sought both attorney's fees and punitive damages under the SCA, count survived motion to dismiss arguing failure to allege actual damages). Moreover, Plaintiffs allege that they conducted an investigation into Katz's e-mail history after he resigned and continued their forensic investigation after receiving responses from Katz and Reinhart that Katz had destroyed any of the documents he had e-mailed to his wife's account. (Am. Compl., Dkt. # 41, ¶¶ 50, 56.) Thus, making all inferences in Plaintiffs' favor, they have alleged actual damages. *Chadha*, 2012 WL 6044701, at *3 (allegations of costs incurred with respect to forensic and computer expenses sufficient to allege actual damages under SCA).

    C.    <u>Breach of Contract (under Texas law)</u>–against Katz[3]

Katz argues that the Court should dismiss the breach of contract count on the ground that Plaintiffs have failed to allege damages or that Katz breached a contract. "In Texas, [t]he essential elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citation and internal quotation marks omitted; alteration in original).

Plaintiffs allege that: (1) Katz entered into a Confidentiality Agreement with Plaintiffs in October 2004; (2) pursuant to the Confidentiality Agreement, Katz was obligated not to communicate of disclose any of Plaintiffs' trade secrets or confidential information; (3) beginning in or around June 22, 2013, Katz breached the Confidentiality Agreement by using Plaintiffs' confidential information for his own benefit or the benefit of Reinhart, disclosing Plaintiffs' confidential information and/or trade secrets, and failing to deliver promptly to Plaintiffs copies of the e-mails he sent to his wife's e-mail account; (4) as a result of Katz's breaches, Plaintiffs have suffered damages including loss of resources expended to investigate and remedy Katz's unauthorized access of the Plaintiffs' computer system and potential loss of profits and goodwill; and (5) as part of the Confidentiality Agreement, Katz agreed that in addition to monetary damages, Plaintiffs were entitled to an injunction  (Am. Compl., Dkt. # 41, ¶¶ 34-38, 58, 87-92.) These

---

[3] The parties brief the motion to dismiss pursuant to Texas law on the breach of contract claim and Michigan law on the breach of fiduciary duty and breach of duty of loyalty claims; therefore, the Court does as well.

5

allegations are sufficient to allege a breach of contract under Texas law.

> D. Breach of Fiduciary Duty and Breach of Duty of Loyalty (under Michigan law)–against Katz

Katz contends that the breach of fiduciary duty and breach of duty of loyalty claims against him are preempted by the Illinois Trade Secrets Act ("ITSA") and the Michigan Uniform Trade Secrets Act ("MUTSA"). Because Plaintiffs allege the claim under Michigan law, the Court will address this argument only as it applies to MUTSA.

Michigan Compiled Laws § 445.1908(1), MUTSA, provides in relevant part that "this act displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret . . . ." However, MUTSA does not displace "[o]ther civil remedies that are not based upon misappropriation of a trade secret." Mich. Comp. Laws § 455.1908(2)(b). "In determining whether a claim is displaced by MUTSA, courts examine 'whether the claim is based solely upon the misappropriation of a trade secret. If so, the claim must be dismissed.'" *Dana Ltd. v. Am. Axle and Mfg. Holdings, Inc.*, No. 1:10–CV–450, 2011 WL 4954061, at *2 (W.D. Mich. Oct. 17, 2011) (quoting *Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 946 (W.D. Mich. 2003)).

As to their breach of fiduciary duty and loyalty counts against Katz, Plaintiffs allege generally that "Katz owes a fiduciary duty to [Plaintiffs] to protect any of their confidential or proprietary information from unauthorized disclosure." (Am. Compl., Dkt. # 41, ¶ 96). Plaintiffs then allege the various ways in which Katz purportedly breached his fiduciary duty and his duty of loyalty to Plaintiffs. First, they allege that Katz "abused and betrayed his position with Plaintiffs" "by accessing [their] confidential information for his own use, and/or for the benefit of Reinhart." (*Id*. ¶¶ 97, 103.) MUTSA states that "misappropriation" means "[d]isclosure or use of a trade secret of another without express or implied consent by a person who. . . [u]sed improper means to acquire knowledge of the trade secret." Mich. Comp. Laws § 445.1902(b)(ii)(A). "Improper means" includes "theft, bribery, misrepresentation, breach, or inducement of a breach of a duty to maintain secrecy . . . ." *Id*. § 445.1902(a). Because the allegation that Katz breached his fiduciary duty and duty of loyalty to maintain secrecy by accessing and disclosing Plaintiffs' protected information falls directly within the purview of MUTSA, the motion to dismiss this aspect of the breach of fiduciary duty and duty of loyalty claims is granted.

Plaintiffs also allege that:

> Katz further breached his fiduciary owed to Plaintiffs by failing to disclose his activities with respect to forwarding [Plaintiffs'] e-mail messages and documents to his wife's e-mail accounts, failing to be candid with Plaintiffs regarding his activities, and taking affirmative steps to conceal such improper activity.

(Am. Compl., Dkt. # 41, ¶¶ 97, 103.) Making all inferences in Plaintiffs' favor, as the Court must

at this point in the litigation, the Court concludes that these allegations are not based solely on the misappropriation of trade secrets and allows these allegations to proceed. This ruling, however, does not preclude Katz from making the same displacement argument on summary judgment, if appropriate.

In addition, Plaintiffs allege that Katz breached his fiduciary duty and breach of duty of loyalty:

> By failing to disclose his intention to resign and become employed by a direct competitor for a period of nearly two months and during the time he was attending an organization-wide conference of the highest executives wherein confidential, strategic and proprietary information was shared, Katz failed to be candid with Plaintiffs. Katz acted in his own self-interest by participating in such conference and continuing his employment so that he could receive additional information and benefits when he had already decided to resign.

(*Id*. ¶¶ 98, 104.) Again, making all inferences in Plaintiffs' favor, as the Court must at this point in the litigation, the Court concludes that these allegations are not based solely on the misappropriation of trade secrets and allows these allegations to proceed. This ruling, however, does not preclude Katz from making the same displacement argument on summary judgment, if appropriate.

In addition to the displacement argument, Katz asserts that Plaintiffs have not alleged that Katz shirked his duties or otherwise failed to meet his employment obligation prior to his resignation. As noted by Plaintiffs, they allege that Katz accessed Plaintiffs' confidential information, forwarded that information to his wife's e-mail account for his own use and the use of Reinhart and took affirmative steps to conceal this activity. These allegations sufficiently allege a breach of fiduciary duty/loyalty. *Elec. Planroom, Inc. v. McGraw-Hill Cos., Inc*., 135 F. Supp. 2d 805, 823 (E.D. Mich. 2001) (unrebutted allegations that defendant "breached his fiduciary duties to [plaintiff] by taking its proprietary trade secret information, deleting information from [plaintiff's] computers, and exploiting the allegedly stolen information to his own and [corporate defendant's] advantage" sufficient to survive summary judgment").

For these reasons, Katz's motion to dismiss the breach of fiduciary duty and breach of duty of loyalty claims is granted in part and denied in part.

### E. Tortious Interference with Contract (under Illinois law) and Inducement of Breach of Fiduciary Duty (under Illinois law)–against Reinhart

Plaintiffs allege that Reinhart tortiously interfered with Katz's Confidentiality Agreement by inducing him to breach it and induced Katz to breach his fiduciary duties to Plaintiffs. (Am. Compl., Dkt. # 41, ¶¶ 106-115.)

To state a claim for tortious interference with a contract in Illinois, a plaintiff must allege:

(1) the existence of a valid contract; (2) the defendant's awareness of the contractual relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other party caused by the defendant's inducement; and (5) resulting damages. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527–28 (7th Cir. 2003). Reinhart argues that Plaintiffs have not alleged that Reinhart had actual knowledge of the Confidentiality Agreement and only allege that "Reinhart was aware of, or had reason to be aware of" the agreement. (Am. Comp., Dkt. # 41, ¶ 108.) Reinhart also asserts that Plaintiffs have not alleged active participation in Katz's illicit activities.

The Court agrees. The only allegation directly implicating Reinhart states that, in response to Plaintiffs' July 9, 2013 letter to Katz confronting him with their findings and demanding that he preserve all information relating to this dispute, Reinhart's general counsel sent Plaintiffs a response stating that Katz had not shared any confidential information with Reinhart and had destroyed any of the Plaintiffs' confidential documents in his possession. (*Id.* ¶ 6.) Plaintiffs have not alleged any facts suggesting Reinhart's actual knowledge of the Confidentiality Agreement or its active persuasion or encouragement in inducing Katz to breach the agreement. *Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 12 C 3530, 2012 WL 4932845, at *6 (N.D. Ill. Oct. 16, 2012) (stating that "[e]stablishing inducement, in the context of a claim for tortious interference with a contract, requires some active persuasion, encouragement, or inciting" and dismissing complaint that failed to so allege) (citation and internal quotation marks omitted); *Mercury Skyline Yacht Charters v. Dave Matthews Band, Inc.*, 05 C 1698, 2005 WL 3159680, at *7 (N.D. Ill. Nov. 22, 2005) (noting that "[p]recedent teaches that allegations of actual awareness of existing contracts are required" and dismissing complaint that did not allege actual knowledge). Therefore, the motion to dismiss the tortious interference with contract claim against Reinhart is granted.

"Under Illinois law, a party is liable for tortious inducement [of a breach of fiduciary duty] if a plaintiff demonstrates that the defendant (1) colluded with a fiduciary in committing a breach; (2) knowingly participated in or induced the breach of duty; and (3) knowingly accepted the benefits resulting from that breach." *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 508 (7th Cir. 2007). Here, Plaintiffs have alleged no facts in support of any of the elements. As already noted, Plaintiffs' allegations do not implicate Reinhart in any intentional collusion or inducement to breach.

Moreover, Plaintiffs have failed to plausibly allege a benefit to Reinhart. Indeed, Plaintiffs' allegation in paragraph 6 of the amended complaint states that Reinhart *denied* receiving any of the confidential information purportedly taken by Katz. Simply because Katz may have received an e-mail from a Reinhart human resources employee that was sent to his wife's e-mail account, the same account to which Katz allegedly sent the Plaintiffs' confidential documents, does not plausibly suggest that Reinhart colluded with Katz in accessing Plaintiffs' confidential information, that Reinhart knowingly participated in such a breach or that it received a benefit from the breach. Moreover, while Plaintiffs argue that because Katz purportedly destroyed e-mails or documents while he was an employee of Reinhart, the actions may be imputed to Reinhart, they fail to cite any authority for that proposition.

Reinhart's motion to dismiss the tortious interference with contract and inducement to breach of fiduciary duty claims is granted.

## IV. Conclusion

For the reasons stated above, Katz's motion to dismiss [26] is granted in part and denied in part while Reinhart's motion to dismiss [23] is granted.

**Date**: October 3, 2013

_____
**United States District Judge
Ronald A. Guzmán**